UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
JOSE AGOSTO,                                    :
                                                :
                  Plaintiff,       :   **MEMORANDUM &**
                                                :   **ORDER GRANTING**
   -against-                                  :   **DEFENDANTS' MOTION**
                                                :   **FOR JUDGMENT ON**
CITY OF DANBURY et al.,                         :   **THE PLEADINGS**
                                                :
                  Defendants.      :   3:23-CV-1153 (VDO)
------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

      After being required to retire involuntarily from his job as a police officer, Plaintiff Jose Agosto brings this civil rights action against his previous employer, the City of Danbury, and municipal officials in their individual and official capacities, including Mayor Joseph M. Cavo, Chief of Police Patrick Ridenhour, and Human Resources Director Virginia Werner (collectively, "Defendants"). Plaintiff alleges the following causes of actions: (1) violation of the Age Discrimination in Employment Act and the Older Workers Benefit Protection Act (the "ADEA"), 29 U.S.C. § 621 *et seq.*, (2) violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60, (3) violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (4) violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and (5) promissory estoppel under Connecticut law. Before the Court is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons stated herein, the motion for judgment on the pleadings is **granted**.

I.  **BACKGROUND**[1]

  A.  **Factual Background**

Plaintiff, a resident of Connecticut, is a former sworn police officer for the City of Danbury. (First Amended Complaint ("FAC"), ECF No. 16, ¶ 4.) Danbury hired Plaintiff in 1996, when he was forty-one years of age, and Danbury employed at least eight police officers older than sixty-five years of age. (*Id.* ¶¶ 16–17.)

In January 2021, Mayor Cavo issued a memorandum that mandated the retirement of members of Danbury's police department on the day following attainment of sixty-five years of age; that memorandum cited Section 32-105 of Danbury's Code of Ordinances to support the Mayor's decision to mandate retirement. (*Id.* ¶ 20.) Plaintiff then received an email from Chief Ridenhour stating that Plaintiff's employment would end on June 30, 2021, as Plaintiff had been sixty-five years of age since 2019. (*Id.* ¶ 27.) The Town of Middlebury, Connecticut hired Plaintiff as a sworn officer one day after the City terminated Plaintiff's employment. (*Id.* ¶ 29.)

  B.  **Procedural Background**

Plaintiff filed charges with the Equal Employment Opportunity Commission and Connecticut Commission on Human Rights and Opportunities and subsequently received notices of release of jurisdiction from these agencies. (*Id.* ¶¶ 13–15.)

In August 2023, Plaintiff commenced this action. (ECF No. 1.) On November 13, 2023, after the filing of a motion to dismiss for failure to state a claim, Plaintiff filed the Amended

---

[1] The Court accepts as true the factual allegations in the Amended Complaint and draws all reasonable inferences in Plaintiff's favor for the purpose of deciding Defendants' motion.

Complaint. (ECF No. 16.) Defendants filed their answer to the Amended Complaint on December 12, 2023. (ECF No. 26.)

In March 2024, Defendants filed their motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (ECF No. 39.) Plaintiff opposed on March 25, 2024, and Defendants filed a reply on April 9, 2024. (ECF Nos. 44, 46.)

## II.     LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In assessing a motion for judgment on the pleadings, a district court "may consider all documents that qualify as part of the non-movant's 'pleading,' including (1) the complaint *or* answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021). Drawing all reasonable inferences in a non-movant's favor, a court's task in evaluating a Rule 12(c) motion is "to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side[.]" *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). "[A] court may consider undisputed allegations of fact on a Rule 12(c) motion under the same standard as Rule 12(b)(6), but it may not use a motion for judgment on the pleadings to weigh disputed factual allegations." *Lively*, 6 F.4th at 302.

"To survive a motion for judgment on the pleadings, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not required to accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d. Cir. 2008) (cleaned up) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

### III.  DISCUSSION

Defendants move for judgment on the pleadings on all claims in the Amended Complaint. As discussed below, the Court concludes that judgment on the pleadings is appropriately granted to Defendants on the federal claims and, having dismissed those claims, declines to exercise supplemental jurisdiction over the claims brought under state law.

#### A.  Count One: Plaintiff's ADEA Claim

The Court first concludes that the motion for judgment on the pleadings must be granted as to Plaintiff's claim that Danbury violated the ADEA in terminating his employment because he was over sixty-five years of age.

Defendants contend that Plaintiff's ADEA claim fails because Plaintiff's termination falls within an exemption under 29 U.S.C. § 623(j) that allows a municipality, like Danbury, to set a mandatary retirement age for public safety officers. Critically, Defendants argue that Plaintiff has not shown that the mandatory retirement age here was a subterfuge to evade the purposes of the ADEA, as Danbury's alleged prior non-enforcement of the mandatory retirement age does not plausibly show that Danbury engaged in subterfuge. (Defs. Mem., ECF No. 39-1, at 10 (citing cases).) Plaintiff does not rebut the contention that Plaintiff did not plausibly allege that Defendants engaged in subterfuge. Instead, Plaintiff counters that the

4

mandatory retirement age here was not enforced for decades, and therefore is based on "an ordinance that intentionally deceives." (Pl. Opp., ECF No. 44, at 3.)

The ADEA provides that it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). In 1986, Congress amended the ADEA to allow state and local governments to mandate the retirement of law enforcement officers and firefighters. This section was repealed in 1993, but in 1996, Congress again amended the ADEA to indefinitely reinstate the law enforcement and firefighter exemption retroactively to the termination of the 1986 provision. *See Feldman v. Nassau Cnty.*, 434 F.3d 177, 181 (2d Cir. 2006); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 68–69 (2000) ("[M]andatory age limits for law enforcement officers and firefighters—at federal, state, and local levels—are exempted from the [ADEA's] coverage."). "Under this provision (29 U.S.C. § 623(j)), state and local governments are allowed to set mandatory retirement ages for firefighters and law enforcement officers if two requirements are met: (1) the discharge must have been pursuant to a state or local law requiring mandatory retirement by a certain age, and (2) the discharge must be pursuant to a bona fide[2] retirement plan that is not a subterfuge for impermissible age discrimination." *Plank v. Town of Wilton*, No. 23-CV-808 (VDO), 2024 WL 4063879, at *6 (D. Conn. Sept. 5, 2024) (citing 29 U.S.C. § 623(j)(1)–(2)). This exception "expressly contemplates discrimination on the basis of age." *Feldman*, 434 F.3d at 184. Therefore, to prevail on an ADEA claim at the pleadings stage, a

---

[2] "Bona fide" "means that the plan exists and pays benefits." *Libront v. Columbus McKinnon Corp.*, 832 F. Supp. 597, 608 (W.D.N.Y. 1993).

law enforcement plaintiff alleging unlawful conduct by a municipality in mandating involuntarily retirement must not only "plausibly allege that he would not have been terminated but for his age," *Lively*, 6 F.4th at 303, but must also plausibly allege that the retirement policy is a "subterfuge" for unlawful discrimination or "a way to evade another provision of the [ADEA]." *Feldman*, 434 F.3d at 184 (quoting *Minch v. City of Chicago*, 363 F.3d 615, 629 (7th Cir. 2004)).

The Amended Complaint includes allegations that, at the time of his forced retirement, Plaintiff was a police officer for Danbury and was over sixty-five years of age. (FAC ¶¶ 1, 27.) Plaintiff also alleges that, in January 2021, Mayor Cavo issued a memorandum that mandated the retirement of members of Danbury's police department on the day following attainment of sixty-five years of age pursuant to Section 32-105 of Danbury's Code of Ordinances. (*Id.* ¶ 20.) While Plaintiff alleges that Section 32-105 of the Danbury Code of Ordinances was not "in effect" until June 30, 2021 (*id.* ¶ 24), there is no dispute that Section 32-105 was enacted in 1961. (Pl. Opp. at 5–6 ("Danbury passed a mandatory retirement ordinance in 1961 that it never imposed and did not pass a new mandatory retirement ordinance after September 30, 1996.").) Therefore, since Plaintiff was discharged pursuant to an enacted local ordinance mandating retirement at sixty-five, the requirement set forth in § 623(j)(1) is satisfied.

As for the second requirement, it is Plaintiff's burden to prove that Danbury's application of the exception to the ADEA's general prohibition against age discrimination is, in fact, subterfuge. *See Feldman*, 434 F.3d at 184 ("Plaintiff bears the burden of establishing that a particular [retirement] plan is a subterfuge under section 4(j)(2)."). Subterfuge has been defined as "a scheme, plan, stratagem, or artifice of evasion." *Public Emps. Ret. Sys. of Ohio v. Betts*, 492 U.S. 158, 171 (1989). The *Betts* Court explained that subterfuge may exist where

6

"an employer [] adopted a plan provision formulated to retaliate against [] an employee" who has "opposed any action made unlawful by the [ADEA] or has participated in the filing of any age-discrimination complaints or litigation," or where an employer decides "to reduce salaries for all employees while substantially increasing benefits for younger workers[.]" *Id.* at 180 (internal quotation marks omitted). In other words, a plaintiff must show "that the employer is using the exemption as a way to evade another substantive provision of the [ADEA]." *Feldman*, 434 F.3d at 184 (quoting *Minch*, 363 F.3d at 629); *see also Betts*, 492 U.S. at 181 ("[T]he employee bears the burden of proving that the discriminatory plan provision actually was intended to serve the purpose of discriminating in some non-fringe-benefit aspect of the employment relation.").

The Amended Complaint is devoid of facts to plausibly show that the mandatory retirement of Danbury's police officers was subterfuge for discrimination. Notably, the term "subterfuge" is absent from the Amended Complaint. Instead, there are allegations showing that Danbury's enforcement of its mandatory requirement age was related to a union's grievance. (FAC ¶¶ 21, 26.) Without more, this alleged economic dispute is not enough to plausibly show that Danbury is using the mandatory age requirement as a way to evade another substantive provision of the ADEA or to discriminate against older police officers in some other respect. *Feldman*, 434 F.3d at 184 (affirming dismissal of ADEA claim under Federal Rule of Civil Procedure 12(b)(6) because allegations of a mandatory retirement policy enacted due to "economic rationales" and "fiscal considerations" do not show subterfuge). Nor is it sufficient to plausibly show subterfuge by alleging, as Plaintiff does, that there was lapse in the enforcement of Section 32-105 of Danbury's Code of Ordinances. *See Police Benevolent Ass'n of the N.Y. State Troopers, Inc. v. Bennett,* 477 F. Supp. 2d 534, 542 (N.D.N.Y. 2007)

7

(finding an executive order that temporarily suspended the mandatory retirement age of state troopers did not show subterfuge); *see also Sadie v. City of Cleveland*, No. 10-CV-822, 2012 WL 10520, at *5 (N.D. Ohio Jan. 3, 2012), *aff'd*, 718 F.3d 596 (6th Cir. 2013) (finding no triable issues of fact regarding subterfuge where the police department deviated from a custom of granting requests to work past the mandatory retirement age); *see also Minch*, 363 F.3d at 630 (finding no subterfuge where a legislature reinstated a mandatory retirement program).

Because Plaintiff failed to adequately allege facts showing that the retirement policy is a subterfuge, § 623(j)(2) is satisfied. The Court does not credit Plaintiff's legal conclusion that "Danbury's termination of Plaintiff was not in accordance with any policy or ordinance as required under the ADEA, 29 U.S.C. § 626(j)." (FAC ¶ 23.) The facts alleged in the Amended Complaint show that Danbury's mandatory retirement policy does not violate the ADEA.

    **B.**    **Plaintiff's Constitutional Claims**

        **1.**    **Official Capacity Claims**

As to the official capacity claims, judgment on the pleadings is entered in favor of Werner and Ridenhour because Plaintiff does not oppose the dismissal of those claims. (Pl. Opp. at 2.) And, regarding the claims against Mayor Cavo in his official capacity, the Court concludes that judgment should be entered in his favor because, as discussed below, Plaintiff has failed to plausibly allege due process and equal protection violations under the Fourteenth Amendment.

        **2.**    **Count Three: Plaintiff's Due Process Claim Under 42 U.S.C. § 1983**

Next, the Court concludes that the motion for judgment on the pleadings as to Plaintiff's due process claim—which alleges that Defendants violated Plaintiff's due process rights by

denying him an opportunity to demonstrate that he could continue his employment—must be granted, as Plaintiff does not plausibly allege the existence of a property interest protected by due process.

Defendants contend that the alleged source of Plaintiff's property interest in continued employment, Connecticut General Statute § 7-430, does not apply to Danbury and, even if it is applicable, it does not create a property interest sufficient to support a due process claim because it provides discretion on whether to permit Plaintiff to work past the age of sixty-five. (Defs. Mem. at 15–19.) Plaintiff asserts that he relied on Connecticut General Statute § 7-430 to support his due process claim and acknowledges that the reliance was misplaced. (Pl. Opp. at 10.)

Under the Due Process Clause of the Fourteenth Amendment, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). Property interests "cannot be found on the face of the Constitution, but rather 'are created[,] and their dimensions are defined by[,] existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits.'" *Looney v. Black*, 702 F.3d 701, 706 (2d Cir. 2012) (quoting *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972)). "The issue of whether an individual has such a property interest is a question of law[.]" *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994).

Plaintiff's due process claim fails at the inception because he does not sufficiently plead a threshold element: whether he has property interest in continued employment as a police

officer. Plaintiff argues that Connecticut General Statute § 7-430 is the source of his property interest. But the statutory text does not support Plaintiff's contention that he has a property interest in continued employment. A state statute does not create entitlement to a property interest where "it provides a *discretionary* course of action for employers[.]" *Jannsen v. Condo*, 101 F.3d 14, 16 (2d Cir. 1996) ("This section does not mandate the employer to grant a leave of absence and a corresponding hearing, but rather permits the procedure."). Section 7-430 states, in relevant part:

> Any member . . . who has attained the age of sixty-five years if employed as a policeman . . . shall be retired on the day following the attainment of such age, except that any such member, at his request and with the annual approval of the legislative body, may be retained in the employ of the participating municipality. . . .

Conn. Gen. Stat. § 7-430. The term "may," as used in Section 7-430, indicates "permissive conduct and the conferral of discretion." *Lostritto v. Cmty. Action Agency of New Haven, Inc.*, 848 A.2d 418, 424–25 (Conn. 2004) (citing *Comm'n on Hum. Rts. & Opportunities v. Truelove & Maclean, Inc.*, 680 A.2d 1261, 1268 (Conn. 1996)). The statutory text therefore provides discretion to an employer on whether to grant a request for continued employment because, following a request from a police officer, that police officer "*may* be retained in the employ of the participating municipality" where there was "annual approval of the legislative body[.]" Conn. Gen. Stat. § 7-430. Because "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion," Plaintiff has not plausibly alleged a property interest created by Connecticut General Statute § 7-430. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); s*ee also N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 164 (2d Cir. 2001) ("Where a purported property interest is contingent on the exercise of executive discretion, no legitimate claim of entitlement exists. A constitutionally protected interest

10

cannot arise from relief that the executive exercises unfettered discretion to award." (cleaned up)).

### 3. Count Four: Plaintiff's Equal Protection Claim Under 42 U.S.C. § 1983

As to Count Four, Plaintiff's equal protection claim—which alleges that Defendants violated Plaintiff's rights when they denied him full benefits and allowed other officers previously retired over sixty-five years of age to continue to receive increased benefits—the Court concludes that judgment on the pleadings must be granted in Defendants' favor as Plaintiff does not plausibly allege liability under either a selective enforcement theory or a class-of-one theory.[3]

Defendants contend that Plaintiff fails to state an equal protection claim, arguing the following: (1) there are no plausible allegations that he was treated more favorably than a similarly situated comparator; (2) there is a rational basis for Danbury's mandatory retirement policy for police officers; and (3) the individual defendants are entitled to qualified immunity. (Defs. Mem. at 19–25.) Plaintiff counters that he is a "class of one" because Defendants intentionally treated him differently from others similarly situated, that there is no rational basis for the difference in treatment, and that qualified immunity does not shield liability in the circumstances of this case. (Pl. Opp. at 10–11.) As discussed below, the Court finds that Plaintiff does not plausibly allege an equal protection claim and therefore, "it sees no need to

---

[3] While it is an open question in the Second Circuit whether the ADEA preempts age discrimination claims under § 1983, the Court need not address this issue. *Piccone v. Town of Webster*, 511 F. App'x 63, 64 (2d Cir. 2013). Defendants did not present this issue as an independent basis for dismissal, and Plaintiff failed to plausibly allege unequal treatment as compared to a similarly situated colleague sufficient to state an equal protection claim.

wade into the murky waters of qualified immunity." *Parsons v. Funchion*, No. 21-CV-1340 (VDO), 2024 WL 2862291, at *7 (D. Conn. June 6, 2024).

Under the Equal Protection Clause of the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. As such, "[t]he Fourteenth Amendment provides public employees with the right to be free from discrimination," *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (cleaned up), and protects them from being "treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). "[A]ge is not a suspect classification under the Equal Protection Clause." *Kimel*, 528 U.S. at 63. Therefore, to state a claim in this case, there are two "distinct pathways for proving a non-class-based Equal Protection violation." *Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019). The first pathway, "[a] selective enforcement claim[,] requires a demonstration that a person was treated differently than others similarly situated based on impermissible considerations, such as race or religion." *Caldwell v. Geronimo*, No. 22-1866, 2023 WL 6381292, at *2 (2d Cir. Oct. 2, 2023). To prevail on a selective enforcement claim, a plaintiff must "prove that (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu*, 927 F.3d at 91 (citing *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)). "A selective enforcement theory merely requires a reasonably close resemblance between a plaintiff's and comparator's circumstances." *Mozzochi v. Town of Glastonbury*, No. 21-CV-1159 (MPS), 2023 WL 3303947, at *3 (D. Conn. May 8, 2023) (cleaned up). The

12

second pathway, a class of one claim, "also requires a comparator and a lack of rational basis for the differential treatment." *Caldwell*, 2023 WL 6381292, at *2. To prevail on a class of one claim, a plaintiff must prove that he is "*prima facie* identical" to a comparator by showing that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Hu*, 927 F.3d at 92.

Plaintiff fails to plausibly allege an equal protection claim under a selective enforcement theory because he has not alleged that any similarly situated colleague, let alone a younger colleague, was treated more favorably. "A plaintiff may support an inference of age discrimination by showing that a defendant treated younger, similarly-situated employees more favorably." *Collins v. Fed. Express Corp.*, No. 22-CV-1472 (VDO), 2024 WL 1774123, at *8 (D. Conn. Apr. 25, 2024) (citing *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999)). The Amended Complaint primarily includes nonspecific allegations that Danbury once employed police officers older than sixty-five years of age, and that they, unlike Plaintiff, continue to receive increased benefits:

> 17. When Danbury hired Plaintiff in 1996 at 41 years of age, Plaintiff was aware of no less than 8 sworn officers [] 65 years of age or older when they retired from service in Danbury.
>
> 44. Plaintiff was denied a full pension and health benefits while other officers previously retired over 65 years of age continue to receive increased pension and health benefits related to their service as police officers past 65 years of age.

(FAC ¶¶ 17, 41.) But merely alleging that Plaintiff and unidentified individuals were police officers in Danbury, and that those police officers were older than sixty-five years of age, does not plausibly show that the individuals are similarly situated within the context of an equal

13

protection claim. Plaintiff has not alleged any degree of similarity between him and the unidentified police officers whom he alleges were treated more favorably by Defendants, thus failing to plausibly show that there was a "reasonably close resemblance between a plaintiff's and comparator's circumstances." *Mozzochi,* 2023 WL 3303947, at *3. Plaintiff "does little more than allege general comparisons between the treatment of Plaintiff and" unidentified individuals. *Mancuso v. Vill. of Pelham*, No. 15-CV-7895 (KMK), 2016 WL 5660273, at *14 (S.D.N.Y. Sept. 29, 2016) (collecting cases in which equal protection claims were dismissed due to insufficient allegations regarding similarly situated comparators). Plaintiff's failure to plausibly allege the existence of similarly situated comparators precludes a reasonable inference that Defendants were "motivated by an intention to discriminate on the basis of impermissible considerations[.]" *Hu*, 927 F.3d at 91. Plaintiff's selective enforcement claim therefore fails, as he makes no allegations to suggest that Defendants were otherwise motivated "to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Id.*

While Plaintiff also asserts that he is pursuing an equal protection claim under a "class of one" theory (Pl. Opp. at 10-11), that assertion is unsupported by any citation to the Amended Complaint. Regardless, Plaintiff's theory of liability is foreclosed by *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 594 (2008), in which the Supreme Court held that "a 'class-of-one' theory of equal protection has no place in the public employment context." The Second Circuit has since applied *Engquist* to conclude that public employees such as Plaintiff "are prohibited from raising such class-of-one claims against their employers." *Davidson v. City of Bridgeport*, 487 F. App'x 590, 594 (2d Cir. 2012). Therefore, an equal protection claim based on a class of one theory brought by a police officer against a

14

municipality to contest the termination of his employment, as is found here, must be dismissed at the pleadings stage. *Colangelo v. Hill*, No. 21-CV-00260 (KAD), 2021 WL 3931887, at *3 (D. Conn. Sept. 2, 2021).

### C. Plaintiff's State Law Claims

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Because the Court entered judgment in Defendants' favor on Plaintiff's federal claims under the ADEA and the Fourteenth Amendment, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 121–22 (2d Cir. 2006); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

### D. Leave To Amend

The Court's scheduling order directed the parties to move to amend a pleading by January 29, 2024. (ECF No. 32.) That deadline has now passed and there is no outstanding request from Plaintiff to amend the complaint. Because Plaintiff has previously amended the complaint, and he has not indicated "how further amendment would permit him to cure the deficiencies in the [amended] complaint," leave to amend is denied as futile. *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 140 (2d Cir. 2011); *see also Fort Worth Emps.' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 233 (S.D.N.Y. 2009) ("Because plaintiff has already amended its complaint once, and because the flaws in pleading are incurable on the facts of this case, dismissal is with prejudice.").

## IV. CONCLUSION

For these reasons, Defendants' motion for judgment on the pleadings is **granted** as to the claims brought under the ADEA and Fourteenth Amendment. Given its declination of supplemental jurisdiction over the state law claims, the Court expresses no view as to whether judgment on the pleadings should enter as to the CFEPA and promissory estoppel claims and dismisses those claims without prejudice to refiling in state court.

As there are no remaining claims, the Clerk of Court is respectfully directed to enter judgment in favor of Defendants and close the case.

**SO ORDERED.**

Hartford, Connecticut
November 22, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge